UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JEFFREY BLAKE, CALVIN GREENE,
HAKEEM BLAKE,

      Plaintiffs,

      vs.

SGT BEKIM KALICOVIC, P.O. MICHAEL TARULLI,

      Defendants.
------------------------------------------------------------ X

17-CV-780

JURY TRIAL DEMANDED

1. Was it William Pitt who said, "The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail, its roof may shake; the wind may blow through it; the storms may enter, the rain may enter, but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement!"

2. The King, of course, had, even in the age of William Pitt, more powers than employees of the New York City Police Department – or so it is supposed to be when we compare the time of Pitt, where the Monarch could execute his subjects at will. Now we have due process of law and the Fourth Amendment.

3. Plaintiffs are residents of the State of New York, and reside in Staten Island and Queens.

4. Defendants are employees of the City of New York, whose residence is unknown, but upon information and belief work at the 120th Precinct.

5. Jurisdiction is predicated on federal question jurisdiction, 42 U.S.C. § 1983.

## FACTS

6. On or about March 15, 2014, defendants entered plaintiff's apartment at 185 Targee Street Apt. 2R in Staten Island, brandishing guns and threatening arrest, and demanding to know where the guns were.

7. They demanded Jeffrey Blake and Calvin Greene lie on the ground while they inspected the bedroom area and demanded again, shouting and threating to know where the guns were.

8. Plaintiff Hakeem Blake happened upon the incident from outside, but was no less traumatized – he was not on the ground. As such, he was in the range of bullets if the officers had "feared for their safety," turned around and shot him.

9. In fact, defendants said they had a warrant to search the apartment, but did not.

10. It is unclear whether they had any warrant to search *any apartment at all*, but upon information and belief, a complaint about possession of a weapon was made by a neighbor in a different apartment – no warrant was had for that apartment either.

11. The apartments were clearly marked. Plaintiffs gave no consent; they were merely told to get on the ground. There were no exigent circumstances that would otherwise excuse this gross abuse of power.

12. Plaintiff Jeffrey Blake was terrified that the officers would leave his apartment with

13. Both officers entered a bedroom while plaintiffs were told to remain on the floor. Jeffrey Blake was terrified they would exit the bedroom with contraband – which he knew was not in the bedroom – and he could be arrested and unjustly convicted for it by in Staten Island, the most segregated borough of New York City.

14. After about 15 minutes of plaintiff's terror, defendants – for reasons unknown – realized they were in the wrong apartment and left for apartment 2L.

15. The event nevertheless traumatized plaintiffs, who have suffered severe emotional distress, nightmares and fear the police even more in the neighborhood where Eric Garner was killed.

16. Garner's death is relevant insofar as defendants continually relive how they narrowly escaped death. In a precinct within a borough where the "Us versus Them" attitude reigns supreme, plaintiffs' rights were not only violated by a technicality, but substantively.

17. Whether there was a warrant or not, the badge confers authority that must be used with extreme care.

18. Any judge or magistrate who signed a warrant to search apartment 2L – if such a magistrate existed - trusted these officers with exercising their powers with extreme care. The citizens of the City of New York expect to be able to trust the officers to exercise the discharge of their duties – when exercising a potential violation of constitutional rights – with precision.

19. This was not a de minimus violation of law. The defendants, had they been private citizens would have been arrested and likely convicted of trespass and menacing.

20. Plaintiffs did not receive this modicum of care and move for relief.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FOURTH AMENDMENT UNDER 42 U.S.C. § 1983

21. Plaintiffs repeat and reallege all previous paragraphs as if set forth herein.

22. Plaintiffs' constitutional rights to privacy were violated when defendants entered their apartment without a warrant.

23. That defendants had guns and used foul language in threatening them with arrest caused them extreme emotional distress.

24. As a result of the foregoing, plaintiff has been damaged.

## SECOND CAUSE OF ACTION
## FALSE IMPRISONMENT UNDER 42 U.S.C. § 1983

25. Plaintiffs repeat and reallege all previous paragraphs as if set forth herein.

3

26. Plaintiffs Jeffrey Blake and Calvin Greene were forced to remain in the living room on the floor for a period of time. If theiy had left, whether or not they were under arrest, they likely would have been shot.

27. That defendants had guns and used foul language in threatening them with arrest caused them extreme emotional distress and to believe their were being detained.

28. The detention was without privilege

29. As a result of the foregoing, plaintiff has been damaged.

WHEREFORE, Plaintiff demands the following relief:

    a. Compensatory Damages;

    b. Punitive Damages;

    c. Attorneys' fees under 42 U.S.C. § 1981;

    d. Such other relief as the Court may deem appropriate.

Dated: New York, New York
       February 10, 2017

*Greg S. Antollino*
GREGORY ANTOLLINO, ESQ.
275 SEVENTH AVENUE, SUITE 705
NEW YORK, NEW YORK 10001
(212) 334-7397 gregory10011@icloud.com

4